# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

**ALGERNON TINSLEY,**

       **Plaintiff,**

v.                                                      Case No.: 3:10-cv-01184

**MICHAEL J. ASTRUE, Commissioner**
**of the Social Security Administration,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On October 4, 2010, Plaintiff filed a *pro se* Complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-1 *et seq.*, alleging that he was subjected to unlawful acts of racial discrimination[1] that culminated in his constructive discharge from the Social Security Administration, Office of Disability Adjudication and Review (ECF No. 1). Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 17). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends that Plaintiff's Complaint be dismissed in its entirety, with prejudice, and that this action be removed from the docket of the Court.

---

[1] In the section of the Complaint entitled "Jurisdiction and Venue," Plaintiff handwrites "age" as an additional basis of discrimination. However, he makes no further allegations pertaining to his age. Consequently, the undersigned construes the complaint as asserting only a claim of racial discrimination under Title VII.

- 1 -

I.     **Relevant History**

On June 2, 2009, Plaintiff, Algernon Tinsley, a seventy-one year old African-American, filed his first federal court complaint against the Defendant alleging employment discrimination on the basis of age, race, and retaliation ("Tinsley I").[2] In particular, Plaintiff claimed that he had been disciplined with a thirty-day suspension from his position as an Administrative Law Judge ("ALJ") for purported timekeeping improprieties while a Caucasian ALJ, who had committed the same infractions, went unpunished. To establish subject matter jurisdiction in the federal district court, Plaintiff alleged that he had timely filed an EEOC complaint and had received a final agency decision.

On October 4, 2010, while Tinsley I was still pending, Plaintiff filed the instant action against the Defendant alleging racial discrimination that ultimately led to Plaintiff's constructive discharge from his ALJ position ("Tinsley II). In part, Plaintiff alleged that certain management actions taken in connection with his thirty-day suspension were discriminatory and evidenced disparate treatment on the basis of race. (ECF No. 1). He also claimed that management allowed subordinate employees to challenge and revise his written opinions and that white ALJs acting under similar circumstances received better treatment than him. To establish subject matter jurisdiction in the federal district court, Tinsley stated that he had filed EEOC Complaint No. PHI-08-0632SSA and had received a final agency decision on July 21, 2010.

On December 7, 2010, the presiding district judge granted Defendant partial summary judgment in Tinsley I, dismissing Plaintiff's claims of racial and age

---

[2] *Tinsley v. Astrue*, Case No. 3:09-cv-0600 (S.D.W.Va. June 2, 2009).

discrimination. The Court determined that Plaintiff had failed to establish a *prima facie* case that his race or age played a role in his thirty-day suspension. The Court noted that both Plaintiff and a Caucasian ALJ had been accused of falsifying time records, and only Plaintiff was disciplined. However, the Court stressed that the Caucasian ALJ was not a "similarly situated" employee for purposes of comparison because the decision maker in his case was not the same person who had imposed the discipline in Plaintiff's case. In regard to the age discrimination claim, the Court explained that the only white ALJ identified by Plaintiff as a comparator was 73 years of age; consequently, he was older than Plaintiff and was part of the protected class. As Plaintiff offered no other evidence to support his claim, he failed to make even a threshold showing of age discrimination. Plaintiff's final claim of retaliation was dismissed on September 20, 2011, also for lack of evidence.

On September 21, 2011, the undersigned entered an order instructing Plaintiff to show cause why this action should not be dismissed in light of the Court's rulings in Tinsley I. (ECF No. 9). In response, Plaintiff argued that the case at bar involved a claim of constructive discharge rather than a claim of disparate discipline as alleged in Tinsley I; therefore, the dismissal of Tinsley I did not affect the merits of Tinsley II. Given Plaintiff's position, the undersigned entered a Scheduling Order pursuant to Fed. R. Civ. P. 16(b) which included deadlines for the filing of disclosures, the completion of discovery, and the filing of dispositive motions. (ECF No. 15).

On June 1, 2012, Defendant filed a timely motion for summary judgment and a supporting memorandum. (ECF Nos. 17, 18). That same day, the undersigned issued a notice to Plaintiff pursuant to *Roseboro v. Garrison,* 528 F.2d 329 (4th Cir. 1975), advising him of his right and obligation to file a response to Defendant's motion for

summary judgment. (ECF No. 19). On June 15, 2012, Plaintiff sought an extension of time in which to respond to the motion, which was granted. (ECF Nos. 20,21). However, to date, Plaintiff has not respond to the pending motion for summary judgment, and the extended deadline for filing a response expired well over a month ago. Therefore, Defendant's motion for summary judgment is ready for resolution.

## II. <u>Summary Judgment Standard</u>

Summary judgment should be granted if "after reviewing the pleadings, depositions, interrogatories, and affidavits, [the court] is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if its existence or absence affects the outcome of the case under the applicable law; a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). When the defendant is the moving party, it may meet this burden by showing that plaintiff lacks proof to establish one or more of the essential elements of its case. *Celotex Corp.,* 477 U.S. at 323. If the defendant successfully makes this showing, the burden shifts to the plaintiff to demonstrate that specific, material facts exist, which provide a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324. The plaintiff cannot survive summary judgment by simply relying upon it own allegations or denials or by "speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985) "The mere existence of a scintilla of evidence"

supporting the plaintiff's case is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252. Instead, the plaintiff must demonstrate that a genuine issue of material fact exists upon which a jury could find in its favor by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

When determining if the defendant has met its initial burden under Rule 56, the court must view the evidence and make all reasonable inferences in a light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court does not weigh the evidence or determine the truth of the matter, but rather discerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52.

### III.  Analysis

Defendant contends that he is entitled to summary judgment on three grounds. First, Defendant claims that Plaintiff failed to exhaust his administrative remedies before seeking judicial intervention. Second, Defendant argues that Plaintiff failed to abide by the deadlines in the Scheduling Order for making Rule 26(a)(1) disclosures and has yet to identify any witness or documentary evidence that supports his complaint.[3] Finally, Defendant asserts that the bulk of Plaintiff's constructive discharge claim is

---

[3] On August 14, 2012, Plaintiff filed Rule 26(a) disclosures. The deadline for such disclosures was December 16, 2011. Moreover, the discovery deadline expired three months ago. (ECF No. 15).

barred by the doctrines of *res judicata* and collateral estoppel. As previously stated, Plaintiff has neither responded in opposition to Defendant's motion, nor supplied the court with evidence demonstrating that a genuine issue of material fact exists which precludes summary judgment in favor of the Defendant.

### A.     *Res Judicata*

The undersigned will first address the issue of *res judicata*. According to Defendant, with the exception of one allegation, Plaintiff's complaint of constructive discharge is based upon the same claims of discrimination previously litigated in Tinsley I. Thus, in Defendant's view, Plaintiff attempts to relitigate claims arising from the same transaction or series of transactions that formed the basis of Tinsley I. Defendant stresses that the district court granted summary judgment in Tinsley I; therefore, Tinsley II is barred by the application of *res judicata*.

*Res judicata*, or claim preclusion, applies when there is "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States,* 369 F.3d 345, 354-55 (4th Cir. 2004) (citing *Nash County Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir. 1981). Clearly, the first and third requirements are met in this case. The parties in Tinsley I and Tinsley II are identical, and the summary judgment entered by the Court in Tinsley I is "considered a final disposition on the merits" for purposes of *res judicata. Adkins v. Allstate Insur. Co.,* 729 F.2d 974, 976 n. 3 (4th Cir. 1984).

In determining whether "an identity of cause of action" exists in Tinsley I and Tinsley II, the issue is not whether the "claims asserted are identical," but whether the two suits and claims therein "arise out of the same transaction or series of transactions

or the same core of operative facts." *Pueschel,* 369 F.3d at 355 (quoting *In re Varat Enters., Inc.,* 81 F.3d 1310, 1316 (4th Cir. 1996)). *Res judicata* operates to bar a claim that was litigated in a previous proceeding, as well as "claims that could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). However, *res judicata* does not extinguish those "claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

In Tinsley I, Plaintiff claimed that he was subjected to disparate discipline at work on the basis of his race and age and for purposes of retaliation. The transaction or series of transactions that gave rise to the complaint involved charges by management that Plaintiff had falsified time records, a subsequent investigation, and a thirty-day disciplinary suspension. In Tinsley II, on the other hand, Plaintiff claims that he was constructively discharged on the basis of his race. In support of his complaint, Plaintiff reiterates the circumstances surrounding his suspension for falsifying time records, but adds an allegation that "[m]anagement allowed Plaintiff's decisions to be challenged and changed by subordinate staff." (ECF No. 1 at 3).

Constructive discharge is a "distinct discriminatory 'act' for which there is a distinct cause of action." *Young v. National Ctr. for Health Serv. Research,* 828 F.2d 235, 237-38 (4th Cir. 1987). Under Fourth Circuit law, "an employee is constructively discharged if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit." *Whitten v. Fred's, Inc.,* 601 F.3d 231, 248 (4th Cir. 2010) (quoting *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1353–54 (4th Cir. 1995)) (internal quotation marks omitted). In the context of a racial

discrimination charge, the employee must show "that he is a member of a racial minority, that his employer's termination of his employment was because of his race, and that the discrimination was intentional." *Tawwaab v. Virginia Linen Service, Inc.* 729 F.Supp.2d 757, 783 (D.Md. 2010). Given that Tinsley I involved only one specific discipline (the thirty day suspension) and was based upon one series of transactions (the charge and investigation) while Tinsley II involves a different adverse employment action, with a different burden of proof and a broader set of operative facts, the undersigned **FINDS** that Tinsley II is not barred by the doctrine of *res judicata.*

### B. *Collateral Estoppel*

Conversely, the undersigned does **FIND** that Plaintiff is barred under the doctrine of collateral estoppel from claiming that the charges against him of falsifying records, the subsequent investigation, and his suspension constitute evidence of racial discrimination supporting his complaint of constructive discharge. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue of fact or law that has been determined in a prior proceeding. *Housley v. Holquist*, 2012 WL 3239887 *3 (D.Md. Aug. 03, 2012) ("The doctrine of collateral estoppel, or 'issue preclusion,' is employed to prevent, in a subsequent proceeding, duplicative fact-finding."). The Fourth Circuit explained in *Sedlack v. Braswell Services Group, Inc.*:

> Collateral estoppel forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Ramsay v. INS,* 14 F.3d 206, 210 (4th Cir.1994) (quotation omitted).

134 F.3d. 219, 224 (4th Cir. 1998). To rely upon the doctrine of collateral estoppel, a party must establish that five elements are present: "(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined

in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." *Id.*

Here, the undersigned initially notes that the suspension issue sought to be precluded is identical to the one previously litigated. In Tinsley I, Plaintiff asserted, in relevant part, that the charges, investigation, and suspension were all motivated by racial discrimination. In this case, Plaintiff again alleges that the charges, investigation and suspension were "discriminatory acts," which preceded and led to his constructive discharge. Therefore, the first element is met. The second element is also met because the district court in Tinsley I clearly determined that Plaintiff failed to establish racial discrimination as a factor in the charges, investigation, or suspension. This determination was critical to the Court's decision to dismiss Plaintiff's complaint of disparate discipline; therefore, element three is likewise met. Finally, elements four and five are met inasmuch as Plaintiff was provided a full and fair opportunity to litigate the issue, and the judgment in Tinsley I is final and valid. For these reasons, Plaintiff is barred from using the charges, investigation, and suspension as evidence of racial discrimination leading to constructive discharge.

### C.     *Exhaustion*

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, provides the exclusive remedy for discrimination claims in federal employment and establishes an administrative and judicial enforcement system. *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 831, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1975). According to Title VII, a federal employee must exhaust administrative remedies before

bringing suit in federal court for employment discrimination. 42 U.S.C. § 2000(e)-5(e)(1). Until the federal employee exhausts his administrative remedies, the district court lacks subject matter jurisdiction over the complaint. *See Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir.2000). The Supreme Court has explained the enforcement procedure as follows:

> Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain preconditions. Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the Civil Service Commission or, alternatively, he may, within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the Civil Service Commission. If he does appeal to the Commission, he may file suit within 30 days of the Commission's final decision. In any event, the complainant may file a civil action if, after 180 days from the filing of the charge or the appeal, the agency or Civil Service Commission has not taken final action.

*Brown,* 425 U.S. 820 at 832. In the present case, Plaintiff contends that he complied with this precondition by requesting Equal Employment Opportunity ("EEO") Counseling and subsequently filing Formal Complaint of Discrimination No. PHI-08-0632-SSA with the Social Security Administration. On July 21, 2010, Plaintiff received a final decision on his complaint. (ECF No. 17-1). The agency found that Plaintiff had not established employment discrimination because management had "articulated legitimate, nondiscriminatory reasons for its actions." *Id* at 1. It is from this final agency decision that Plaintiff now seeks relief.

The scope of Plaintiff's complaint in this court is circumscribed by the scope of his administrative charges. *Jones v. Calvert Group, Ltd.* 551 F.3d 297, 300 (4th Cir. 2009). "In determining what claims have been administratively exhausted, the litigant is not limited to the 'precise' wording of his formal EEOC charge of discrimination," *Talbot*

*v. U.S. Foodservice, Inc.* 191 F.Supp.2d 637, 640 (D.Md. 2002) (quoting *Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184, 1189 (D.Md. 1977). Nonetheless, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Jones,* 551 F.3d at 300 (citing *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996)). Thus, the undersigned must examine the scope of Complaint No. PHI-08-0632-SSA to determine if the claims in this action were addressed by the administrative complaint process, were developed through a reasonable investigation in the administrative action, or are otherwise reasonably related to the charges in the administrative complaint.

According to the final agency decision, in Complaint No. PHI-08-0632-SSA, Plaintiff alleged that he was subjected to a hostile work environment based upon his race and age as demonstrated by the following four incidents:

> 1. Management has brought charges against him alleging that he falsified his time and attendance records while working at a remote site.
>
> 2. Security devices have been used to monitor his time and attendance, which is a violation of the National Agreement between the SSA and the Judge's Union.
>
> 3. Management allows his decisions to be challenged and changed by subordinate staff; and
>
> 4. The disparate treatment that he receives is an embarrassment and damaging to his personal and professional reputation.

(ECF No. 17-1 at 1). The first two incidents undoubtedly refer to the charges, investigation, and suspension subsequently litigated by Plaintiff in Tinsley I and, as such, they were exhausted. The final two incidents, however, allege generic and presumably ongoing acts by subordinates and colleagues that Plaintiff described in his

administrative complaint as "harassment." Although all four of these "incidents" expressly form the basis of the complaint in the instant action, the undersigned is unable to reasonably conclude that Plaintiff intended his claim of constructive discharge to be limited to the alleged episodes of harassment investigated as part of the administrative claim process. This is particularly true when noting that neither the administrative complaint nor the resulting investigation addressed a claim of constructive discharge.

Nothing in the record suggests that at the time the administrative complaint was lodged and investigated, Plaintiff had terminated his employment with the Social Security Administration. Moreover, the administrative complaint alleged only a hostile work environment. Nothing in the record indicates that Plaintiff filed a subsequent complaint asserting a claim of constructive discharge. Given that "[c]onstructive discharge is a discrete discriminatory act requiring administrative exhaustion," the undersigned **FINDS** that Plaintiff failed to exhaust his administrative remedies prior to filing the instant action. *See Blue v. Appalachian State University,* 2012 WL 242837 *5 (W.D.N.C. Jan. 25, 2012) (citing *Young v. National Ctr. for Health Serv. Research,* 828 F.2d 235, 237-38 (4th Cir. 1987)). Consequently, the failure to exhaust administrative remedies "provides an independent basis for dismissal." *Id.*

### D.     *Failure to Establish Constructive Discharge*

Assuming, *arguendo*, that Plaintiff's administrative remedies were exhausted by the investigation surrounding his EEOC complaint in that it uncovered all of the episodes of alleged racial discrimination resulting in Plaintiff's constructive discharge, the undersigned will address Defendant's final argument. Defendant contends that Plaintiff has failed to produce any evidence to support a complaint of racially motivated

constructive discharge. Defendant points to Plaintiff's wholesale failure to comply with the disclosure deadlines set forth in the Scheduling Order, arguing that Plaintiff's lack of timely disclosures leaves him without any witness or documentary evidence to establish his claim.

After excluding the paragraphs of the complaint that pertain to Plaintiff's previously litigated suspension, the remaining factual allegations are as follows: (1) management allowed Plaintiff's decisions to be challenged and changed by subordinate staff; and (2) white employees similarly situated to Plaintiff were given better treatment than Plaintiff under the same or similar circumstances. (ECF No. 1 at 3). Accepting these allegations as true, and making all reasonable inferences in the light most favorable to Plaintiff, the undersigned **FINDS** that Plaintiff fails to state a viable claim of constructive discharge.[4]

In order to succeed on a constructive discharge complaint, Plaintiff "must show that his employer deliberately made his working conditions so objectively intolerable as to force the Plaintiff to quit." *Jolly v. University of North Carolina at Wilmington,* 831 F.Supp.2d 916, 920 (E.D.N.C. 2011). "Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person." *Heiko v. Colombo Savings Bank, F.S.B.,* 434 F.3d 249, 262 (4th Cir.2006) (citing *Williams v. Giant Food Inc.,* 370 F.3d 423, 434 (4th Cir.2004). The burden of proving objectively intolerable conditions is heavy; "[e]ven truly awful working conditions may not rise to the level of constructive discharge." *Hill v. Verizon Md., Inc.,* 2009 WL 2060088, at *13 (D.Md. July 13, 2009). "Intolerability is not established by showing merely that a

---

[4] The fact that Plaintiff has now made Rule 26(a) disclosures is irrelevant to the undersigned's findings and recommendations inasmuch as Plaintiff's allegations simply do not state a cause of action for constructive discharge.

reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign[;] ... [r]ather, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign-that is, whether he would have had no choice but to resign." *Blistein v. St. John's College,* 74 F.3d 1459, 1468 (4th Cir.1996) (overruled on other grounds)(quoting *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985) (internal citations and quotations omitted)). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not intolerable as to compel a reasonable person to resign." *Heiko,* 434 F.3d at 262, (citing *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 378 (4th Cir. 2004). The Fourth Circuit explained in *Honor v. Booz-Allen & Hamilton, Inc.*:

> An employee may not be unreasonably sensitive to his working environment. Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

*Honor,* 383 F.3d at 187 n. 2 (citing *Goldsmith v. Mayor and City Council of Baltimore,* 987 F.2d 1064, 1072 (4th Cir.1993)).

The law is well-settled that a claim of constructive discharge requires proof of working conditions that are even harsher than those required to state a claim of hostile work environment. *Brown v. Kessler Institute for Rehabilitation, Inc.*, 2011 WL 849601 *9 (D.N.J. Mar. 7, 2011) ("Constructive discharge imposes a higher burden of proof as to the level of discrimination and harassment that occurred than on a hostile work

- 14 -

environment claim"). *See also Fincher v. Depository Trust and Cleaning Corp.,* 604 F.3d 712, 724 (2nd Cir. 2010) (The standard for establishing constructive discharge is higher than the standard for hostile environment); *Spencer v. Wal–Mart Stores, Inc.,* 469 F.3d 311, 317 (3d Cir. 2006) (noting that "[a] hostile work environment will not always support a finding of constructive discharge" and that proof of constructive discharge requires a demonstration of "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment") (internal quotations omitted); *Tunis v. City of Newark,* 184 Fed. Appx. 140, 142 (3d Cir. 2006) (contrasting the "considerably high burden required to prove constructive discharge" with the "less onerous burden required to prove hostile environment claims"). Certainly, "[m]ore than ordinary discrimination is necessary to establish a constructive discharge claim; in the 'ordinary' case, an employee is expected to remain employed while seeking redress." *Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 886 (7th Cir. 1998). *See also Williams v. Giant Food Inc.* 370 F.3d 423, 434 (4th Cir. 2004) (Plaintiff's claim that "her supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back did not establish the objectively intolerable working conditions necessary to prove a constructive discharge."); *Cleveland v. Southern Disposal Waste Connections,* 2012 WL 3241561 *9-10 (6th Cir. 2012) (Disparaging remarks, two week suspension for alleged mishandling funds, demotion and removal from customer service position did not constitute intolerable working conditions); *Mieczkowski v. York City School Dist.,* 414 Fed. Appx 441 (3rd Cir. 2011) (Assistant superintendent failed to demonstrate intolerable working conditions despite evidence of salary differential and alleged disparate discipline); *Nassar v. University of*

*Texas Southwestern Med. Ctr.,* 674 F.3d 448 (5th Cir. 2010) (Racial harassment and slurs and intensified scrutiny of work did not rise to the level of intolerable working conditions); *Smith v. Fairview Ridges Hosp.,* 625 F.3d 1076, 1085-86 (8th Cir. 2010) (Racial slurs did not meet high standard of intolerability when they were only sporadic and merely offensive); *Anderson v. Clovis Mun. Schools,* 265 Fed. Appx 699 (10th Cir. 2008) ("It is not enough that [plaintiff's] conduct constituted adverse employment action or that it was discriminatory; a constructive discharge claim 'requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable.' (citation omitted). [Plaintiff] may have felt 'ganged up on' and 'alone oftentimes,' but 'given the objective standard, an employee's subjective feelings or beliefs are not relevant in a constructive discharge claim.'" (citation omitted)).

Here, Plaintiff complains that management allowed subordinates to challenge and revise his work and that similarly situated white employees received "better treatment," although Plaintiff provides no elucidation on what he means by "better treatment." In his EEOC complaint, Plaintiff argued that his work was more freely challenged than the work produced by Caucasian judges; nonetheless, Plaintiff never identified a single Caucasian judge whose opinions were treated more favorably than those issued by Plaintiff, nor described any particular instance on which his work was maligned or revised by a subordinate employee. (ECF No. 17-1 at 9). Similarly, Plaintiff never presented any evidence to establish that management deliberately encouraged or endorsed such behavior, or had a calculated intent to force Plaintiff to resign from his position as an ALJ. To the contrary, Plaintiff's supervisor had no knowledge of this alleged situation, testifying at the administrative hearing that Plaintiff never approached him with concerns that subordinates were undermining Plaintiff's authority. The

supervisor added that feedback from attorney advisors and paralegals should be welcomed by the administrative law judges. Nonetheless, he confirmed that when a judge and a subordinate disagreed on an opinion, "the judge [made] the ultimate decision in the case." (*Id.*). Plaintiff offered no evidence to refute that testimony.

In light of the evidence of record, Plaintiff fails to demonstrate the existence of working conditions so intolerable as to require his resignation. The "mere possibility that evidence supporting his allegations exists … is simply an insufficient basis on which to allow plaintiff to proceed." *Jolly,* 831 F.Supp.2d at 920. Accordingly, the undersigned **FINDS** that Plaintiff fails to make a *prima facie* showing of constructive discharge. Thus, Defendant is entitled to summary judgment and a dismissal of the complaint.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the proposed findings and **RECOMMENDS** that**:**

1. Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED;** and

2. This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the

"Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, the Defendant, and any counsel of record.

**FILED**: August 15, 2012.

Cheryl A. Eifert
United States Magistrate Judge